IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

DANHUA ZHENG                                                                                          PLAINTIFF

V.                                                                                    CAUSE NO. 1:22-CV-95-SA-RP

ALEJANDRO MAYORKAS, Secretary of
Department of Homeland Security; MERRICK
GARLAND, United States Attorney General;
LYNUEL DENNIS, Memphis Field
Office Director                                                                                       DEFENDANTS

ORDER AND MEMORANDUM OPINION

On July 8, 2022, Danhua Zheng, who is proceeding *pro se*, initiated this lawsuit by filing his Complaint [1] against Alejandro Mayorkas, Merrick Garland, and Lynuel Dennis. The Defendants responded by filing a Motion to Dismiss [9]. Although the Defendants filed their Motion [9] on October 11, 2022, Zheng has not responded to it, and his time to do so has long passed. The Court is prepared to rule.[1]

*Relevant Background*

Zheng is a native and citizen of China. He is currently residing in Tupelo, Mississippi. According to his Complaint [1], in January 2019, he, through an attorney, submitted to the United States Citizenship and Immigration Services ("USCIS") an I-589 application for asylum and for withholding of removal. Zheng contends that USCIS is in possession of all necessary information

---

[1] Although Zheng did not respond to the Defendants' Motion [9], since it is a dispositive motion, the Court will not grant it as unopposed. *See* L. U. Civ. R. 7(b)(3)(E) ("If a party fails to respond to any motion, *other than a dispositive motion*, the court may grant the motion as unopposed.") (emphasis added). Instead, the Court will consider the Motion [9] on its merits without the benefit of a response. The Court also notes that it is cognizant of Zheng's *pro se* status. However, Zheng has had an ample amount of time to respond to the Motion [9], which, again, was filed on October 11, 2022. And a party's *pro se* status does not warrant special treatment nor does it justify failure to comply with the applicable rules. *See, e.g., Miller v. Tower Loan of Miss., LLC*, 2022 WL 3093292, at *2 (N.D. Miss. Aug. 3, 2022) ("This Court has on numerous occasions expressed that *pro se* litigants should be extended some leniency; however, a litigant's *pro se* status does not negate the duty to comply with general rules of litigation.").

but has nonetheless failed to adjudicate his petition for affirmative asylum. Specifically, he contends that he meets the relevant criteria and "has submitted all the necessary documents and information along with his I-589 petition. USCIS has not issued any notice scheduling [an] interview or requesting additional evidence." [1] at p. 3.

In his Complaint [1], Zheng makes reference to USCIS' failure to adjudicate his petition as a violation of the Administrative Procedures Act ("APA"), as well as his Fifth Amendment rights. He ultimately requests that the Court (1) declare unlawful USCIS' failure to adjudicate his petition; and (2) order USCIS to adjudicate the petition. Through the present Motion [9], the Defendants seek dismissal of all of Zheng's claims.

*Analysis and Discussion*

The Defendants raise multiple arguments in favor of dismissal. The Court will address them but will first provide some general background as to the asylum application process and, more specifically, where Zheng's application falls within that process.

I. *Application Process Generally and Zheng's Application*

The Immigration and Nationality Act ("INA") permits any alien "who is physically present in the United States or who arrives in the United States . . . irrespective of such alien's status," to apply for asylum in the United States. 8 U.S.C. § 1158(a)(1). If granted, asylum "provides an individual with the ability to legally remain in the United States indefinitely, obtain employment authorization, seek permission to travel in and out of the United States, and apply for permanent resident status after one year." [10] at p. 2 (citations omitted). The INA provides that the agency must interview an asylum application within 45 days from the date of application, unless "exceptional circumstances" exist. *See* 8 U.S.C. § 1158(d)(5)(A)(ii).

In the 1990s, USCIS implemented a scheduled system known as Last-In-First-Out

("LIFO"). Susan Raufer, Acting Chief of the Asylum Division of USCIS, articulated the rationale underlying the LIFO system in her declaration:

> Under this system, the Asylum Division scheduled recently filed cases for interview ahead of older cases. By giving priority to the newest cases, applicants were on notice that filing asylum applications solely to obtain work authorization carried a risk that their cases would be heard quickly and that their effort to solely obtain work authorization would be fruitless. In other words, by scheduling new cases sooner rather than later, LIFO reduced the incentive engendered by the backlog to file fraudulent or otherwise non-meritorious asylum claims just to obtain work authorization.

[9], Ex. 1 at p. 6.

However, due to the rise in credible and reasonable fear cases (which were not subject to LIFO) and the surge of cases arising at the country's southern border, USCIS temporarily adopted a First-In-First-Out ("FIFO") system in 2014. But, according to Raufer, the institution of FIFO had negative consequences, and USCIS faced a crisis-level backlog in January 2018. *See* [9], Ex. 1 at p. 8. USCIS therefore reverted to the LIFO system in January 2018. Raufer's declaration provides context for that decision:

> 24. As noted in a press release, USCIS faced a crisis-level backlog of 311,000 pending asylum cases as of January 21, 2018, making the asylum system increasingly vulnerable to fraud and abuse. The backlog had grown by more than 1,750 percent during the five years prior to the re-implementation of LIFO, and the number of new asylum applications had more than tripled. To address this problem, USCIS follows these priorities when scheduling affirmative asylum interviews:
>
> (a) Applications that were scheduled for an interview, but the interview had to be rescheduled at the applicant's request or the needs of USCIS;
>
> (b) Applications pending 21 days or less since filing; and
>
> (c) All other pending applications, starting with newer filings and working back toward older filings.

25. LIFO is a capacity-based scheduling system: during periods when asylum applications and additional caseloads surge, not all recently filed cases will be scheduled, even if they meet the above-mentioned criteria, due to staffing limitations and shifting priorities that require Asylum Officers to be reassigned to other urgent caseloads, such as credible and reasonable fear screenings and MPP fear assessments. This shift in resources reduces the number of Asylum Officers assigned to LIFO, thereby decreasing the number of affirmative asylum cases that can be scheduled during those surge periods. Additionally, within LIFO priorities, asylum applications filed by certain Afghan parolees under Operates Allies Welcome as described in section 2502(a) of Public Law 117-43, The Extending Government Funding and Delivering Emergency Assistance Act (Sept. 30, 2021) are prioritized for interview within 45 days of filing and, if there are no exceptional circumstances, for completion of the final adjudication within 150 days of filing, in compliance with sect. 2502(c) of the Act. Cases that are not scheduled in accordance with the LIFO are placed into the backlog.

26. Asylum Directors may exercise discretion to schedule urgent cases ahead of other cases where exigent circumstances warrant the exercise of such discretion. Examples of such cases include where an applicant may need urgent medical care but cannot obtain it because of a lack of lawful status or instances where the applicant's children and spouse may be at risk in the applicant's home country. Applicants may submit a request to be scheduled for an interview outside of the priority order by submitting an urgent interview scheduling request[] in writing to the asylum office with jurisdiction over their case.

27. Based on the Asylum Division's experience, reinstituting the LIFO scheduling system is a critical element in slowing the growth of the pending application caseload and efficiently processing all pending asylum applications by eliminating the incentive to file frivolous, fraudulent, or otherwise non-meritorious asylum applications solely to obtain employment authorization. . . [T]he rate of growth of the backlog has decreased when compared to the years prior to the reinstitution of LIFO in January 2018.

[9], Ex. 1 at p. 8-9.

Raufer's declaration also sets forth steps that USCIS has taken to decrease its backlog, including hiring new asylum officers, utilizing new technology, and adding a new vetting center in Atlanta, Georgia. *See id*. at p. 13-15.

The Defendants also provided the Court with a declaration signed by Peter Haertling, the Director of the New Orleans Asylum Office. Among other things, Haertling's declaration addresses Zheng's specific application and other circumstances surrounding his case:

> 31. Plaintiff applied for asylum on January 22, 2019.
>
> 32. As explained in paragraph 23 of the Raufer Declaration, USCIS announced its change in scheduling on January 31, 2018. Plaintiff's application falls into the third category (subsection C) of the announcement, i.e., cases that had not been rescheduled or pending less than 21 days. As a result, Plaintiff will need to await adjudication of his case until agency resources permit.
>
> 33. Cases that were filed after the return of LIFO that have not been scheduled yet for the reasons enumerated previously in this declaration are being scheduled in reverse receipt order as resources permit. There are 1206 asylum applications that were filed in 2019 that are currently pending with the New Orleans Asylum Office along with the Plaintiff's application.
>
> 34. As explained in paragraph 26 of the Raufer Declaration, Asylum Directors may exercise discretion to schedule an urgent case ahead of other cases where exigent circumstances warrant the exercise of such discretion. See https://www.uscis.gov/humanitarian/refugees-and-asylum/asylum/affirmative-asylum-interview-scheduling. The New Orleans Asylum Office received an expedite[d] request from the plaintiff on December 9, 2021 that was denied due to lack of exigent circumstances.
>
> 35. As explained in paragraph 9 of the Raufer Declaration, asylum applicants may apply for advanced parole to travel outside of the United States while an asylum application remains pending. 8 U.S.C. § 1182(d)(5); 8 C.F.R. § 212.5(f). The plaintiff has not, as of this date, submitted any such applications.

> 36. While Plaintiff awaits the adjudication of his asylum application under the current scheduling system, he may apply for employment authorization. According to USCIS records, the Plaintiff was issued an employment authorization document on July 22, 2019, which was renewed on April 29, 2022, and is valid until April 28, 2024. Plaintiff will be eligible to submit a Form I-765, Application for Employment Authorization to renew his EAD up to 180 days before his current EAD expires. In the case that Plaintiff's I-765 is not approved by the time that his current EAD expires, Plaintiff is eligible for automatic extension of the employment authorization documents based on a temporary final rule issued by DHS on May 4, 2022, which increased the extension period and provided up to 360 days of additional automatic extension time, for a total of up to 540 days from the date of the properly filed Form I-765.

[9], Ex. 2 at p. 9-10.

>    II.    *Arguments for Dismissal*

Reverting to the substantive portions of Zheng's Complaint [1], the Court notes that he asserts three separate counts. In Count One, he alleges that the Defendants' conduct violates the APA. In Count Two, he avers that the Defendants have violated his Fifth Amendment rights. Finally, Count Three simply alleges that the Defendants' "failure . . . to adjudicate [his] I-589 Asylum Application constitutes irreparable harm." [1] at p. 5.

The Defendants attack the Complaint [1] from multiple angles. They first contend that this Court lacks subject matter jurisdiction and then argue that Zheng has failed to properly plead his claims or, alternatively, that summary judgment is appropriate on all claims.

As to the lack of jurisdiction argument, the Defendants, noting that Zheng seeks asylum pursuant to 8 U.S.C. § 1158, *et. seq.*, emphasize the following language from that particular section of the INA:

> Nothing in this subsection shall be construed to create any substantive or procedural right or benefit that is legally enforceable

6

> by any party against the United States or its agencies or officers or any other person.

8 U.S.C. § 1158(d)(7).

The Defendants aver that this language makes clear Zheng is "statutorily precluded from claiming a private right of action to enforce the deadlines set forth in the immigration statute." [10] at p. 10-11.

To support this contention, the Defendants direct this Court's attention to the District Court for the Southern District of New York's decision in *Fangfang Xu v. Cissna*, 434 F. Supp. 3d 43, 52 (S.D.N.Y. 2020). In *Xu*, the plaintiff asserted multiple claims for relief based upon USCIS' delay in adjudicating his asylum application. *Id*. at 47. Among those claims was a stand-alone claim for a violation of the INA. *Id*. The district court found that it lacked jurisdiction over that claim, specifically holding:

> The Court easily finds that it lacks subject matter jurisdiction over this claim for two reasons. First, § 1158(d)(7) expressly states that the statute does not provide asylum applicants with a right to have their application resolved within the delineated time frame. . . Second, Plaintiff's claim against Defendants, officers of the United States named in their official capacity, requires the Court to consider the doctrine of sovereign immunity. The basic rule of federal sovereign immunity is that the United States cannot be sued at all without the consent of Congress. . . Plaintiff has not identified any relevant provision of the INA by which Congress waived its immunity to suit concerning the timelines of asylum application adjudication under § 1158(d). *Quite to the contrary, § 1158(d)(7) expressly disclaims Plaintiff's right to bring a suit arising out of that statute against the federal government or its agents. For these reasons, the Court lacks subject matter jurisdiction over Plaintiff's INA claim*.

*Id*. at 57 (citations and quotation marks omitted; emphasis added).

As this language makes clear, the district court determined that the language of Section 1158(d)(7) precluded the plaintiff's stand-alone INA claim. Critically though, the Court finds this

case to be distinguishable from *Xu* in one key respect. Unlike the plaintiff in *Xu*, Zheng has not asserted a stand-alone INA claim. Instead, as emphasized above, Zheng seeks relief pursuant to two substantive sources: the APA and the Fifth Amendment. In *Xu*, even though finding that the language of Section 1158(d)(7) precluded the stand-alone INA claim, the district court separately analyzed the merits of the plaintiff's distinct APA and Fifth Amendment claims. In other words, the fact that Section 1158(d)(7) precluded the stand-alone INA claim did not mean that it precluded *all* claims.

Since Zheng's claims relate to purported violations of the APA and the Fifth Amendment (not the INA), *Xu*'s holding on the INA claim and the language of Section 1158(d)(7), have little to no bearing on them. The Court rejects the Defendants' jurisdictional argument. Having done so, the Court will turn to the merits of Zheng's claims and the Defendants' requested dismissal of each of them.[2]

    *A.*    *Count One*

In Count One, Zheng contends that USCIS' failure to adjudicate his petition violated the APA.

"The Administrative Procedure Act gives any 'person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute' the right to judicial review." *Chuttani v. USCIS*, 2020 WL 7225995, at *2 (N.D. Tex. Dec. 8, 2020) (quoting 5 U.S.C. § 702). In pertinent part, the APA authorizes the reviewing court to

---

[2] The Court notes that the Defendants moved for dismissal pursuant to Rule 12(b)(1), Rule 12(b)(6), and Rule 56. Since the Defendants attached to their Motion [9] documents outside of the pleadings and the Court will consider them in reaching its decision, consideration under the summary judgment standard is appropriate. *See, e.g.*, *Boateng v. BP, PLC*, 779 F. App'x 217, 219 (5th Cir. 2019) (quoting Fed. R. Civ. P. 12(d)) ("A district court converts a Rule 12(b)(6) motion to dismiss into a summary judgment motion when 'matters outside of the pleadings are presented to and not excluded by the court.'"). Therefore, the Court will apply the familiar summary judgment standard.

"compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). "The APA imposes a general but nondiscretionary duty upon an administrative agency to pass upon a matter presented to it within a reasonable time, and authorizes a reviewing court to compel agency action unlawfully withheld or unreasonably delayed." *Palakuru v. Renaud*, 521 F. Supp. 3d 46, 49 (D.D.C. 2021) (quoting *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1099 (D.C. Cir. 2003); quoting 5 U.S.C. §§ 555(b), 706(1)) (internal quotation marks omitted). "To state a claim under section 706(1), the plaintiff must plead 'that an agency failed to take a discrete agency action that it is required to take.'" *Chuttani*, 2020 WL 7225995 at *2 (quoting *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64, 124 S. Ct. 2373, 159 L. Ed. 2d 137 (2004)).

"What constitutes an unreasonable delay in the context of immigration applications depends to a great extent on the facts of the particular case." *Kolluri v. USCIS*, 2021 WL 183316, at *4 (N.D. Tex. Jan. 17, 2021) (quoting *Ahmadi v. Chertoff*, 522 F. Supp. 2d 816, 822 (N.D. Tex. 2007)). To analyze whether an agency has unreasonably delayed, courts typically utilize and apply the six factors (referred to as the "*TRAC* factors") set out in *Telecommunications Research & Action Center v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984). *See, e.g.*, *Kolluri*, 2021 WL 183316 at *4 (applying the *TRAC* factors in a similar context). The factors have been articulated as follows:

> (1) The time agencies take to make decisions must be governed by a rule of reason;
>
> (2) Where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
>
> (3) Delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
>
> (4) The court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;

9

> (5) The court should also take into account the nature and extent of the interests prejudiced by delay; and
>
> (6) The court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Ensco Offshore Co. v. Salazar*, 781 F. Supp. 2d 332, 337 (E.D. La. 2011) (citing *TRAC*, 750 F.2d at 80) (internal citations and quotation marks omitted).

As indicated, the first factor concerns whether the agency's procedure is governed by a rule of reason. The District Court for the Eastern District of Louisiana has noted that "[o]f these factors, the first is the 'most important.'" *Id.* (quoting *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008)).

Raefer's declaration addressed in great detail the procedure which USCIS has in place for processing applications. And Raefer specifically explained why USCIS adheres to the LIFO system. The Defendants emphasize that multiple other courts have found this LIFO system to be a valid rule of reason. For example, the District Court for the Southern District of California has previously held:

> According to the Complaint, since January 2018, the priority for reviewing asylum applications is based on a last in, first out basis. In other words, the most recently filed applications are adjudicated before earlier filed applications. While Congress specifies that the initial interview should commence within 45 days, and a final adjudication shall be completed within 180 days, the plain language of § 1158(d)(5)(A) clarifies that the timing requirements are not mandatory. 8 U.S.C. § 1158(d)(5)(A). Moreover, the last in, first out policy sets forth a "rule of reason" for the adjudication of asylum applications. Thus, the first and second factors favor Defendants even though Plaintiff's application has been pending for roughly three and a half years.

*Lajin v. Radel*, 2019 WL 3388363, at *3 (S.D. Cal. July 26, 2019) (some internal citations omitted); *see also Xu*, 2020 WL 240839 at *6 ("[T]he delay was the result of the LIFO rule, which was itself

a reasoned response to a systemic crisis."); *Yueliang Zhang v. Wolf*, 2020 WL 5878255, at *5 (E.D.N.Y. Sept. 30, 2020) ("These precedents, and the record of which the Court takes judicial notice, support a finding that the adjudication of asylum applications pursuant to LIFO is governed by a 'rule of reason.'").

Having reviewed these authorities and considered the record in this case, including the fact that Zheng has provided no authority or evidence to the contrary, the Court finds that USCIS' process of adjudicating applications pursuant to LIFO constitutes a "rule of reason." This factor weighs in favor of the Defendants.

The second factor concerns whether Congress has provided a timetable or other indication as to the speed with which the applicable agency should act. *See*, *e.g.*, *Ensco*, 781 F. Supp. 2d at 337. In the INA, Congress provided the following guidance:

> In the absence of exceptional circumstances, the initial interview or hearing on the asylum application shall commence not later than 45 days after the date an application is filed . . . [and] in the absence of exceptional circumstances, final administrative adjudication of the asylum application, not including administrative appeal, shall be completed within 180 days after the date an application is filed[.]

8 U.S.C. § 1158(d)(5)(A).

Therefore, while Congress has provided a timeline, the statute includes a clear qualification for that time—the absence of "exceptional circumstances." *See id*. The Defendants contend that exceptional circumstances exist, arguing that "[t]he exceptional circumstance that exists here is the current backlog of affirmative asylum applications stemming from surges at the southern border and the pulling of resources from affirmative interviews to address those surges." [10] at p. 18. Furthermore, the District Court for the Eastern District of New York described the statutory directive as follows: "the qualifying phrase 'absent exceptional circumstances' in § 1158(d)(5)(A)(iii) suggests that Congress intended that the timeline not apply while the USCIS is

11

dealing with an exceptional level of asylum applicants." *Zhang*, 2020 WL 5878255 at *5.

The Court finds the Defendants' argument persuasive. Although Congress has provided a timetable, it provided a clear limitation on that guidance—in particular, the absence of "exceptional circumstances." The Defendants have shown, through competent, uncontradicted summary judgment type evidence, that such circumstances do exist. The second factor weighs in favor of the Defendants.

The third *TRAC* factor concerns whether there is a risk to human health and welfare. *See TRAC*, 750 F.2d at 80. Similarly, the fifth factor concerns "the nature and extent of the interests prejudiced by the delay." *Id*. The Defendants, relying on Raufer's declaration, represent to the Court that "Plaintiff has received an Employment Authorization Document (EAD), meaning he is authorized to obtain gainful employment, and is allowed to remain in the country while he awaits adjudication." [10] at p. 19. Zheng's Complaint [1] provides no counter to that point, and, since he has not responded to the present Motion [9], the Court has nothing before it to weigh against the Defendants' argument. The Court finds that the third and fifth factors weigh in the Defendants' favor.

Under the fourth factor, the Court should consider "the effect of expediting delayed action on agency activities of a higher or competing priority." *Ensco*, 781 F. Supp. 2d at 337. Raufer's declaration explains at length the ongoing activities of USCIS and the efforts that the agency has undertaken in order to address the competing interests. In sum, there is nothing before the Court at this time to indicate that it should intervene and re-prioritize those activities. The Court also notes that its intervention in Zheng's case would likely serve to prejudice other applicants who, similar to Zheng, are experiencing a delay. This factor likewise weighs in the Defendants' favor.

Finally, the sixth factor makes clear that the Court "need not find any impropriety lurking

behind agency lassitude in order to hold that agency action is unreasonably delayed." *Id*. The District Court for the Southern District of California noted, rather simply, that "it does not appear that there is an impropriety in the delay of Plaintiff's application." *Lajin*, 2019 WL 3388363 at *3. This Court similarly has nothing before it to indicate any impropriety in regard to the delay associated with Zheng's application.

Having considered the applicable factors, the Court finds that Zheng's APA claim fails on the merits. In reaching this conclusion, the Court does not as a matter of law express approval of extensive delays of this nature. Nonetheless, the applicable factors weigh in the Defendants' favor. Zheng's APA claim is DISMISSED.

    B.    *Count Two*

In Count Two, Zheng alleges that USCIS' failure to adjudicate his petition runs afoul of his Fifth Amendment due process rights. The Defendants contend that "[a] Fifth Amendment violation occurs when an individual is deprived of life, liberty, or property without due process of law. U.S. Const. amend. V. The Plaintiff has not made any factual allegations to show that his life, liberty, or property have been, or would be deprived by the delay in the adjudication of his asylum application." [10] at p. 14.

The District Court for the Southern District of New York rejected a similar claim in *Xu*, 434 F. Supp. 3d at 58. There, the district court pointed to numerous cases wherein delays in the adjudication of immigration petitions did not constitute violations of due process:

> But Plaintiff does not allege that Defendants have refused to adjudicate her application; she merely takes issue with their failure to do so within a time frame she believes to be reasonable. Courts have found that comparable and even greater delays in adjudication in the immigration context have not resulted in due process violations. *See*, *e.g.*, *Vang v. Gonzales*, 237 F. App'x 24, 31-32 (6th Cir. 2007) (unpublished decision) (finding fourteen-year delay in completing asylum adjudication did not violate due process);

13

> *Mudric v. Attorney Gen. of United States*, 469 F.3d 94, 98-99 (3d Cir. 2006) (finding no due process violation for four-year delay in processing asylum application because 'federal immigration laws do not vest in aliens a constitutional right to have their immigration matters adjudicated in the most expeditious manner possible'); *L.M.*, 150 F. Supp. 3d at 217-17 (finding two-year delay in adjudication proceedings did not violate due process).

*Id*.

Relying on these authorities, the district court dismissed the plaintiff's due process claim: "Plaintiff failed to allege prejudice with any specificity; she claims only that she is not receiving the full rights, privileges, and benefits that she might receive if her application were granted. Such prejudice is too speculative to state a claim for denial of due process." *Id*. at 59.

The case at bar is similar. Although Zheng's Complaint [1] makes a general assertion that his due process rights have been violated, he has not alleged any specific facts which, if true, would show prejudice.

This claim appears to be one of dissatisfaction with the pace at which USCIS is moving. While perhaps understandable, that alone is insufficient to establish a due process violation. Zheng's due process claim is therefore DISMISSED.

  C.  *Count Three*

In Count Three, Zheng alleges that "[t]he failure of USCIS to adjudicate [his] I-589 Asylum Application constitutes irreparable harm." [1] at p. 5. This allegation does not include a substantive legal basis upon which relief can be granted. Moreover, based upon the above-referenced affidavits submitted by the Defendants, which have not been contradicted, it is far from clear to this Court that Zheng faces any immediate irreparable harm. Count Three is therefore DISMISSED.

*Conclusion*

For the reasons set forth above, the Defendants' Motion [9] is GRANTED. Zheng's claims are hereby DISMISSED *with prejudice*. A Final Judgment consistent with this ruling will issue this day. This CASE is CLOSED.

SO ORDERED, this the 21st day of June, 2023.

/s/ Sharion Aycock  
UNITED STATES DISTRICT JUDGE
